Good morning, Your Honor. Ray Finnegan on behalf of Petitioner, Mr. Montejo-Castaneda. I would like to reserve two minutes of my time for rebuttal. Sure. And also I have one issue, one fact I'd like to point out to the Court, not really related to the arguments present today, is the fact that a petition from a lawful permanent resident spouse for Petitioner is current and ready to go forward as of two weeks ago. The priority date is current, so if I'm able to get more time anyway or the case is remanded to the BIA for any purpose, I'll probably be able to transfer the case to an adjustment case through the wife's petition, which I think is important. I think Respondent's brief incorrectly argues that the sole issue in this case is whether it was a violation of due process to have an AWO affirmance without opinion decision from the Board. That's not the only argument present before this Court. However, it is an important issue because when the BIA elects to issue an AWO decision, it hamstrings this Court in the appellate review process. And I believe there was three important issues raised to the BIA in the brief of Petitioner. One is whether the asylum withdrawal violated due process. Secondly, whether the petty offense exception applied to the one of the convictions, and therefore, the NACARA pretermission was incorrect. Thirdly, whether there was witness declarations who were not the Respondent, the Petitioner's wife and stepson were not able to testify in court. Their declarations were attached to the BIA brief stating why they were not present in court and also what they would have testified to. None of those issues are addressed by the BIA. Why were they not present in court? Because the case dragged on for five years, and the prior counsel didn't have them adequately prepared. How is that any fault of the IJ? Maybe, maybe it's not. There was three IJs on the case. The case kind of transferred. The whole case was very convoluted. That's not really my primary argument, Your Honors. I think the main focus should be on the asylum withdrawal that was done without the presence of defense counsel being present in court during the voir dire. When the immigration judge questioned the Petitioner, there was an important legal issue whether there was imputed political opinion. Petitioner did testify earlier in court that he had a fear of returning because, as a farmer, they were often pressured by thieves, and they were killed when they weren't turning over the money. Well, the legal issue was some of these thieves are connected to the guerrilla, and it's a political issue as to whether they're supporting the guerrilla or not, which is related to imputed political opinion. Therefore, I don't think it was a knowing and voluntary and willing withdrawal of the asylum. Other issues why I think the asylum withdrawal is important was it was withdrawn in 1998. The government lodged new charges in 1999, which made Petitioner ineligible for NACARA form of relief. At that point, in 1998, the NACARA was the primary application, so you can see why he wasn't strenuously pursuing the asylum. However, when his NACARA case starts crumbling and falling away, then the asylum case should be brought to the forefront. The issue should have been addressed. The procedural problem here is that you raised an issue to the BIA that you couldn't have raised. I mean, you raised it before the IJ, but it was really a procedural challenge to what the IJ did, and yet BIA never responded to it in any fashion. Is that right? Right. The issue of deferment is without opinion. And so it's true, is it not, that your primary issue is that the BIA, this shouldn't have been a streamlined case because under our case law, that kind of procedural challenge requires something other than a summary affirmance. Is that the short of it? I think that is the one of the primary arguments. Yes, Your Honor. I think the whole argument is a due process argument, and inside that is the affirmance without opinion, the prism of the due process. So, yes, I would agree. What did you tell the BIA that the IJ did wrong with relation to the people not testifying? I think I said that he should have provided the continuance so that the people could have testified. And the problem was at that point the case was five years old, and the judge was not in the mood to provide a continuance. I just want to make sure I'm clear about what was raised. A continuance was requested at the IJ level. It was denied? You know, the problem was the counsel never raised the continuance issue at the IJ level. Okay. So there was no continuance motion. Right. But then when the case goes to the BIA, you argue that as a matter of due process it should have been continued anyway. Right. And the BIA never responded to that argument one way or the other. Right. And declarations were provided from the potential witnesses. But I thought the main issue was that the lawyer didn't show up for a while. And while the lawyer wasn't there, the IJ dealt directly with the Petitioner and essentially either persuaded him or allowed him to withdraw. That's half of it. It's very, very important. The assignment was withdrawn during the hearing when Petitioner's counsel was not present. The second issue was the judge even said, if you're going to file an asylum, file it in June at the next hearing. Petitioner's counsel shows up at an unscheduled hearing at 1 o'clock the same day later that I think it was May 5th, 1998 was the hearing in the morning where Petitioner's counsel was not present. He shows up at 1 p.m., and the issue of the asylum never gets addressed. And counsel fails to file an asylum application, and it's never brought up again. And I believe it's in the record. But that's essentially an ineffective assistance of counsel claim, which might have to be a motion to reopen or something. But the first one was just a flat challenge to what happened at the IJ hearing. Right. Not what didn't happen, what did happen. Right. Right. And it's in the regulations that the immigration judge has a duty to explore avenues of potential relief. And the hinting in the brief is the immigration judge violated the immigration regulations and constitutional rights when he denied Talent's application for asylum without proper voir dire, which I assume may include the federal court. Right. And as an immigration attorney myself, every time an asylum application is withdrawn in court, the immigration judges always question the alien whether they have a fear of return. But they always ask the immigration counsel, do you concur with that agreement? Are you in agreement that the asylum should be withdrawn? And do you think that there's any potential relief available? They never solely rely, especially when the person's represented, they never solely rely on the alien's statements when they make that withdrawal. Did you want to reserve some time? Yes, Your Honor. I'll reserve some time. Thank you. Okay. Hello again. Hello again. Jen responds on behalf of the Respondent. We would maintain that the only aspect of this case that is properly before this court is whether an affirmance without opinion was appropriate. Okay. Was it? It was. It certainly was. Why? When the Board elects to affirm without opinion, as this Court recognized in Chen and as the Board set forth in a matter of OSG, the Board necessarily looks at the arguments raised by the alien in his appeal and considers whether any of those would warrant further review or whether they couldn't have been affirming on the supposed effect of that. And I thought our case law makes this clear, that when you have a procedural challenge to what happened before the IJ, the IJ's opinion itself doesn't answer that challenge. So essentially, there's no response to it. The record in this case does answer these challenges, though. To take each of Petitioner's points in turn, with respect to his asylum application, that application was withdrawn knowingly with full understanding of the consequences. Well, they say it wasn't. Correct. Okay. And now, isn't it incumbent on the BIA to pass on it one way or the other and explain why what happened with Bell? By affirming without opinion, they have. They've looked to the record. They've considered whether there's any basis upon which to conclude that the asylum application was predominated. It was not. This potential imputed political opinion argument has never been raised. That's an unexhausted claim. It's not properly ---- Which one is it? Unexhausted? Exactly. No, I didn't hear what you said. I apologize. The imputed political opinion argument that Petitioner took. But the fact that he ---- his asylum application was withdrawn without counsel and without adequate information was exhausted at some length. It has been raised. Yes. Okay. It wasn't responded to by the BIA. The record answers that it's simply an incorrect argument. What about our Montez Lopez opinion? Doesn't that essentially say that in these circumstances, streamlining is inappropriate, the BIA has to respond to something like this? You can't ---- saying it's in the record is not adequate. Somebody someplace has to respond to it in the agency. I would have to submit a supplemental briefing to fully answer whether that case is distinguishable. I'm not prepared to ---- The 2007 case. I apologize. I'm not prepared to comment on the fact that they compare with this case. But, again, returning to this record, what Petitioner has set forth in his brief and in his appeal to the Board are quite simply misrepresentations of what actually transpired in this case. To turn next ---- Well, the BIA could have said that. They could have. But the Affirmance Without Opinion regulations contemplate situations in which the there's simply no issue that's been raised, and thus we affirm without opinion. And this Court has recognized that in situations where no substantial legal issue is raised in the petition for review to undermine the Affirmance Without Opinion, the Court will not look behind the Board's decision to construe its own regulations as permitting an Affirmance Without Opinion. Petitioner asserts that his wife and stepson were prevented from appearing. Today, he's argued that the attorney didn't adequately prepare them. However, in his appeal to the Board and in his petition for review, the only explanation offered is that the wife and stepson assumed that another continuance would be granted. Let me ask you this. Take Judge Berzon at her word that there's this case called Montes Lopez. And, again, I apologize. That says that if there is a procedural irregularity raised at the ---- to the Board, the Board has to address it. It can't streamline. If that's the rule, wouldn't you agree that we would have to follow Montes Lopez and then send it back? These are procedural errors that he's claiming. Whether you think they're valid or invalid, that's another story. But the BIA has to do more than streamline it. It would have to affirmatively address it and presumably reject it. It is our position, and we would read this Court's decisions in Falcone, Carriche, and Chen together, as indicating that where the record is devoid of any such procedural error. Here you're fighting my premise. My premise is the case says that if there's a procedural error raised, it has to be addressed by the Board. That's what we ---- that's ---- if that's the rule, that's the situation that's presented, is a procedural error not addressed by the Board. I would agree. If there is a procedural error raised, in this case, there was no procedural error raised. Oh, it's raining. What about questioning? What about questioning? There was no merit. I apologize. I'm sorry. I think I interrupted. I apologize. What about talking to Mr. Montejo Castaneda without the presence of his counsel when his counsel was not there in the morning hearing? You don't think that might be a procedural error? Well, based on the record before this Court, that issue dovetails with Petitioner's further unsubstantiated allegation that he was prevented from being represented by the counsel of his choosing. In that hearing, which the record reflects is the only hearing at which Petitioner was not represented, that brief morning session, the immigration judge not only recommended to Petitioner that he may wish to seek alternative representation, he carefully shepherded him through the issues that were implicated in his present asylum application, the possibility that this immigration judge was required to do. So contrary to indicating that Petitioner's asylum application was either unfairly pretermitted or that he was prevented from being represented by the counsel of his choosing, this morning's session that is at issue with respect to the asylum application and to the representation issue reflects the opposite. It reflects that Petitioner was carefully guided in terms of his asylum application and also in terms of his representation. Well, it doesn't matter whether it's right or not at this point, but it is true, as I understand it, that he thought he was represented by counsel. His lawyer didn't show up, and it wouldn't at least be a colorable claim to say at that point that the IJ should have simply said, you know, go home and let's either get that lawyer or let's schedule a hearing without the lawyer, but this year it was supposed to be with the lawyer, and the lawyer didn't show. Right? So his claim is he shouldn't have gone forward with anything at that point. That was prejudicial to him, which it was. He withdrew an asylum application. But the record reflects that the immigration judge very carefully, you know, contemplated his claim. I understand, but he has a claim. His claim is that that isn't what should have happened. Rather than carefully trying to be his lawyer, he should have gone and waited until he had a lawyer, because he knew he wanted a lawyer, and he thought he had a lawyer. He argued with the immigration judge that he did have a lawyer, and that he was quite pleased, based on information he received, I believe, from a relative who worked in immigration, that this was the lawyer for him, and that this was the lawyer he wanted to keep. That was the content of the discussion at that hearing. I mean, if you lose today, the worst that happens is the BIA goes back and issues an opinion instead of a streamlining. That's what's on the table today, really, isn't it? Correct. But, again, based on this Court's prior case law, we would argue that the board clearly, following its own regulations, looked at Petitioner's arguments, looked at the record, and determined that there were no other cases. Prior case law, except for the case that you say he didn't read, Montes Lopez. Again, and I would be happy to submit a supplemental briefing if that would be of assistance. With respect to the NACARA application, the application for relief that is at issue in this case, there's no error in the immigration judge's determination that Petitioner, based on his criminal history, was eligible only for 203F1B relief as an alien convicted of two crimes involving moral turpitude. His argument that the petty offense exception should apply is simply incorrect. He's convicted of two crimes involving moral turpitude and necessarily ineligible. And similarly, as an alien properly removable under 212A2, he would only be eligible for NACARA B. The immigration judge's determination that Petitioner failed to demonstrate exceptional and extremely unusual hardship is similarly not subject to this Court's review at this point. Let me just ask one more question. I'm trying to make sure I understand what you're saying. Yeah. If we agree that Montes Lopez v. Gonzalez holds that summary affirmance by the BIA is tantamount to ignoring an alien's due process claim and requires remand, okay, if we agree that that's true, and if we agree that Mr. Montes Castaneda was addressed by the immigration judge without the presence of counsel, knowing that he had counsel, are you saying that because whatever occurred during that hearing did not prejudice, essentially, Mr. Montes Castaneda, there is no due process violation? Absolutely. Okay. There is no due process violation. And again, I would reiterate that the Board necessarily had to consider Petitioner's arguments in his appeal and necessarily reviewed the record to determine whether any of those arguments created a substantial legal issue. That's true. But where we're left is with no ---- when the Board is simply deciding questions that were decided by the IJ, then they tell us, well, go look at the other. So the IJ opinion is the final opinion. Then we have a reason, a reasoned decision to look at. Right now, in this circumstance, and I assume this is what's behind the opinion that we keep telling you about, we have no reasoned decision. In other words, we, as a court, don't know why. It may be that the BIA did notice this and must have it was prominent and rejected it, but they didn't tell us why. I see that my time is running out. Go ahead and answer the question, and then we'll conclude. Thank you. They necessarily have told you why. You have the immigration judge's decision. But he didn't tell us why on this issue. That's the problem. The Board didn't explain? Nobody has explained on this issue anything. In electing to summarily ---- The IJ did what he did, but he didn't explain why. And the BIA didn't explain why it was correct. That's the situation we've got. We would read this decision and we would read the regulations as indicating that by summarily affirming, the Board has stated that none of the issues raised were substantial enough to warrant three-Board member review. Thanks, Ms. Ponson. Thank you. Mr. Pinnigan, you've got a couple minutes left. Thank you, Your Honor. I would disagree with counsel's representation that the judge at the hearing did a thorough review of the issue. And also, the imputed political opinion argument is raised in the petitioner's opening brief at page 17. Am I correct in what I guess, Ms. Ponson, if you win today, the best you get is it goes back to the BIA for an opinion? Yes, Your Honor. And I would welcome the opportunity to re-brief the issues with the BIA. I don't know that you get to re-brief it. Maybe you do. Maybe you don't. I guess that's up to the BIA. I guess I would make a motion to re-brief. But it would be up to them whether they would allow it or not. And I would note that Certified Administrative Record pages 82 and 83 show the questioning without presence of counsel. And in those questions, respondent, I mean, not petitioner, called respondent of the Immigration Court, but here is the petitioner, Mr. Monteo Castaneda, says he has a fear of return to El Salvador. The question revolves around whether that fear is one of the five enumerated grounds. That's why it's important. And it's a legal issue that the attorney needs to be present for. And the attorney needs to address legal issues while the petitioner, Mr. Monteo Castaneda, can address the factual scenario. Attorney needs to be there to address the legal issues. Thank you. Ms. Pongo, thank you as well. Mr. Finnegan, thank you. The case argued as submitted. Thank you. 0476783, Rilo Raza v. McCasey is submitted at this time. Just for the record, 0656048, Francis v. California is stricken from the argument calendar. Next case to be argued is 0573600, Hernandez Perez v. McCasey. Each side will have 20 minutes.
judges: Silverman, Berzon,, Benitez